1                 UNITED STATES DISTRICT COURT
2                   DISTRICT OF PUERTO RICO

3   ASOCIACIÓN DE INDUSTRIALES
4   DE PUERTO RICO,

5       Plaintiff,             Civil No. 09-1122 (JAF)

6       v.

7   MARKETNEXT, INC., et al.,
8
9       Defendants.

---

10                    **MEMORANDUM OPINION**

11      Plaintiff, Asociación de Industriales de Puerto Rico ("Puerto

12 Rico Manufacturers' Association," or "AIPR"), brings this case

13 against Defendants, MarketNext, Inc. ("MarketNext"), Edison R. Misla-

14 Grillasca ("Misla"), Yvette Olivero-Vázquez ("Olivero"), the conjugal

15 partnership between Misla and Olivero, Graphic Print & Design, Inc.

16 ("Graphic"), Guillermo Avilés-Aguirrechea ("Avilés"), Glorimar de

17 Jesús-Mila ("de Jesús"), and the conjugal partnership between Avilés

18 and de Jesús. Docket No. 50. Plaintiff alleges trademark

19 infringement, false designation of origin, unfair competition, false

20 advertising, and trade name infringement under the Lanham Act, 15

21 U.S.C. § 1125(a); and trademark infringement, unfair competition,

22 false advertising, trade name infringement, contractual breach, and

23 pre-contractual liability under Puerto Rico law, Civil Code art. 1802

24 (P.R.). Id. Specifically, Plaintiff accuses Defendants of usurping

Civil No. 09-1122 (JAF)                                                    -2-

1   Plaintiff's use of its trademark, "Industriales." Id. Plaintiff seeks

2   a preliminary injunction against Defendants to bar them from further

3   infringement of Plaintiff's trademark, Docket No. 3; Defendants

4   opposed, Docket Nos. 42, 44. On March 11, 2009, we entered an order

5   for a preliminary injunction against Defendants with a note that a

6   memorandum opinion would follow. Docket No. 46.

7                                     I.

8                      **Factual and Procedural Synopsis**

9        We draw the following facts from the record in this case thus

10  far. Docket Nos. 1, 3, 15, 27, 42, 44, 50; Prelim. Inj. Hr'g Tr.

11       Plaintiff is a non-profit trade association, formed in 1928,

12  that represents businesses in the manufacturing and services sectors

13  of Puerto Rico. Manufacturing constitutes forty percent of the Puerto

14  Rican economy. From a peak of 1600 members in 2001, Plaintiff's

15  membership has declined in recent years to 1200 members.

16       In addition to manufacturers, Plaintiff's membership includes

17  law firms and universities in Puerto Rico, and port authorities and

18  banks in the United States proper. Plaintiff regularly communicates

19  with its members through electronic and print media, and seeks to

20  inform the public on matters relevant to manufacturing and services

21  through educational programs and publications. Plaintiff relies on

22  its relationship with its members to achieve its educational and

23  legislative aims. To communicate with its members, Plaintiff has

24  published a trade magazine, "Industriales."

1    People in the manufacturing and services sectors in Puerto Rico

2    frequently refer to Plaintiff as "los Industriales." Several news

3    articles, dating from as early as 1994, quoted statements by

4    Plaintiff as representative of the views of manufacturers in Puerto

5    Rico. Docket Nos. 1-8, 15-4. An article dated August 29, 2000,

6    referred to Plaintiff by the short form, "Industriales." Id.

7    MarketNext, Inc., is a Puerto Rico company engaged in marketing

8    products and services through print media that it produces. Misla is

9    the president of MarketNext; Olivero is Misla's wife. Graphic is a

10   Puerto Rico company engaged in printing media for distribution.

11   Avilés is the president of Graphic; de Jesús is Avilés' spouse.

12   In 2001, Plaintiff published two supplements called

13   "Industriales" in El Nuevo Día, the daily newspaper with the largest

14   circulation in Puerto Rico. The supplement dated July 1, 2001, bore

15   the title, "Industriales," with the circular AIPR logo printed over

16   the second "I" on the front cover. Docket No. 1-6. Disappointed with

17   the inability of El Nuevo Día to run the supplement on glossy paper,

18   Plaintiff terminated publication with El Nuevo Día and sought a new

19   publisher.

20   Plaintiff and MarketNext executed a contract dated April 29,

21   2003 ("Contract"), in which MarketNext agreed to undertake its best

22   efforts in developing, publishing, and promoting Plaintiff's official

23   publication, Industriales. Docket Nos. 1-10, 15-6. The Contract

24   provided that MarketNext would be the exclusive dealer of the

Civil No. 09-1122 (JAF)                                                    -4-

1    publication and would enjoy a portion of the profits from advertising

2    for the magazine as compensation. Id. The Contract prohibited

3    MarketNext from contracting advertisements that promote partisan

4    politics, religion, pornography, tobacco, or alcohol. Id.

5    Furthermore, the Contract required MarketNext to notify Plaintiff

6    prior to changing advertising fees, report to Plaintiff monthly on

7    the magazine's content and advertisements contracted by MarketNext,

8    consult with Plaintiff regularly on MarketNext's promotional efforts

9    for the magazine, submit proposed advertisements in digital format to

10   Plaintiff in advance of printing, and report to Plaintiff if

11   MarketNext intended to deviate from an agreed schedule for

12   publications and content for the first year. Id. The Contract

13   provided for termination by either party with thirty days' notice.

14   Id. Finally, the Contract was silent on intellectual property rights.

15   See id. Plaintiff did not discuss or contemplate copyright and

16   trademark protection in the course of forming the Contract.

17       MarketNext produced the first issue of Industriales in 2003.

18   The front cover bore the inscription, "Asociación de Industriales de

19   Puerto Rico," above the title, as well as Plaintiff's website,

20   "www.prma.com," immediately beneath the title. Docket No. 1-12. The

21   title, however, does not include Plaintiff's logo. Id. The masthead

22   within the magazine listed Misla as director, Olivero as sales agent,

23   and Plaintiff's president, executive vice president, and public

24   relations officer. Id. A notice appeared beneath the names, advising

1    readers that "INDUSTRIALES is published quarterly by MarketNext for

2    the Puerto Rico Manufacturer's Association." <u>Id.</u> Another advisory at

3    the bottom of the masthead alerted readers to MarketNext's assertion

4    of copyright protection over the first issue. <u>Id.</u> Lastly, a letter

5    from Manuel Cidre, Plaintiff's president, appeared in a vertical

6    column next to the masthead. <u>Id.</u> The letter endorsed the new magazine

7    and bears Plaintiff's circular logo.  <u>Id.</u>

8         During the course of MarketNext's performance on the Contract,

9    William Riefkohl, Plaintiff's executive vice president, occasionally

10   instructed Misla on content for <u>Industriales</u>, such as directing him

11   to exclude coverage of politicians in an issue preceding the 2004

12   Puerto Rico elections. Plaintiff never received payments from

13   MarketNext under the profit-sharing clause in the Contract, and

14   MarketNext never gave full accounting of its profits arising from its

15   advertisement campaign for <u>Industriales</u>. At the hearing, Misla

16   testified that he had provided some figures to Plaintiff, but could

17   not cite specific documents. Misla considered the advertisers to be

18   the chief clients for MarketNext, as the fees paid by advertising

19   companies contributed to the production of <u>Industriales</u>.

20        MarketNext had originally obtained a list of potential

21   advertising customers from Plaintiff comprised of Plaintiff's

22   membership after the conclusion of their Contract in 2003.

23   Initially, MarketNext primarily promoted <u>Industriales</u> among

24   Plaintiff's members. <u>See</u> <u>Docket No. 1-14</u>. MarketNext has further

Civil No. 09-1122 (JAF)                                                    -6-

1    developed  customer  relations  through  its  own  efforts,  and  has

2    supplemented  its  contacts  with  Plaintiff's  updated  membership

3    directories  that  Misla  once  received  as  a  member  of  AIPR.

4    Plaintiff's  members  continue  to  comprise  a  substantial  portion,

5    perhaps  nearly  one-half,  of  MarketNext's  advertising  customer  base.

6         Between  October  2005  and  September  2007,  MarketNext  filed  for,

7    and  secured,  copyright  protection  from  the  United  States  Copyright

8    Office  for  all  issues  of  <u>Industriales</u>  from  2004  to  2007.  <u>Docket</u>

9    <u>No. 44-2</u>.  The  certificates  of  registration  include  no  reference  to

10   Plaintiff,  and  Misla  affirmed  by  signature  on  each  of  these  filings

11   that  he  is  the  authorized  agent  of  the  copyright  claimant.  <u>Id.</u>

12        On  February  4,  2008,  MarketNext  sent  a  letter  to  Plaintiff

13   seeking  renegotiation  of  the  Contract,  demanding  that  Plaintiff

14   recognize  MarketNext's  claim  of  intellectual  property  rights  over

15   <u>Industriales</u>.  <u>Docket  Nos.  1-15,  15-10</u>.  Plaintiff  resisted  these

16   demands  in  writing.  <u>Docket  Nos.  1-16,  15-10</u>.  Riefkohl  met  Misla

17   personally  in  August  2008  to  discuss  the  contractual  dispute.  Misla

18   attended  the  meeting  under  the  belief  that  Riefkohl  had  invited  him

19   to  discuss  the  content  of  the  magazine,  an  authority  which  Riefkohl

20   had  rarely  exercised  during  MarketNext's  course  of  performance  to

21   that  date.  After  this  meeting,  MarketNext  and  Plaintiff  exchanged

22   further  correspondence  in  which  MarketNext  persistently  claimed

23   ownership  over  the  magazine  and  Plaintiff  consistently  contested

24   these  claims.  <u>Docket  Nos.  1-20,  1-21,  15-14,  15-15</u>.

Civil No. 09-1122 (JAF)                                                    -7-

1       On May 5, 2008, MarketNext petitioned the Puerto Rico Department

2   of  State  to  register  "Industriales"  as  its  own  trademark  for

3   publications.  Docket Nos. 1-17, 15-11.  In  the  petition,  Misla

4   certified that he had no knowledge of any other entity with the right

5   to  use  the  same  mark  in  Puerto  Rico.  Id.  In  support  of  this

6   application, Misla also submitted an affidavit dated April 24, 2008,

7   asserting MarketNext's own use of the mark in its publications since

8   2003. Docket Nos. 1-23, 15-17.

9       Publication continued under the Contract until November 5, 2008,

10  when Plaintiff gave notice of its intent to terminate the Contract.

11  Docket Nos. 1-22, 15-16.  Since then, Defendants have produced two

12  more issues of their publication without Plaintiff's authorization.

13  Docket Nos. 1-25, 1-26, 15-18.  The masthead in the first of these

14  issues omitted all references to Plaintiff and its officers, and

15  stated  that  MarketNext  is  the  publisher  of  Industriales.  Docket

16  Nos. 1-25, 15-18.  The  issue  included  a  letter  from  Misla  which

17  asserted that MarketNext will continue publication after six years as

18  publisher  of  Industriales.  Id.  This  issue  featured  numerous

19  advertisements  from  firms  doing  business  in  Puerto  Rico.  Id.

20  MarketNext maintains a website, "www.industrialesmag.com," to promote

21  its publication. Docket No. 1-30.

22      On  December  17,  2008,  after  Plaintiff  had  learned  of  the

23  publication  of  the  first  issue  without  its  permission,  Plaintiff

24  demanded that Graphic, MarketNext's printer, cease and desist from

Civil No. 09-1122 (JAF)                                                -8-

1   further publication. <u>Docket Nos. 1-28, 15-20</u>. In its letter,

2   Plaintiff asserted ownership of the trademark, "Industriales," and

3   informed Graphic that it had a pending application for trademark

4   protection with the Puerto Rico Department of State. <u>Id.</u>

5       On January 23, 2009, MarketNext filed a petition before the

6   United States Patent and Trademark Office ("PTO"), claiming ownership

7   of the mark, "Industriales," and asserting that it had first used the

8   mark in February 2003, and that it had first used the mark in

9   commerce in September 2007. <u>Docket No. 1-24</u>. Subsequently, Plaintiff

10  filed its own petition for trademark protection for "Industriales" on

11  January 29, 2009, asserting first use and first use in commerce on

12  July 1, 2001. <u>Docket No. 1-33</u>.

13      Misla sent a letter dated February 5, 2009, informing his

14  advertising customers that <u>Industriales</u>, as published by MarketNext,

15  was no longer affiliated with Plaintiff. <u>Docket Nos. 1-32, 15-22</u>.

16  The letter stated that MarketNext would continue to develop its

17  publication and expand distribution in Puerto Rico and the United

18  States. <u>Id.</u> Lastly, the letter asserted that Defendant Olivero was

19  the only person authorized to receive communications on placing

20  advertisements in <u>Industriales</u>. <u>Id.</u>

21      After Plaintiff had terminated its Contract with MarketNext, it

22  hired a new publisher, Media & Marketing Partners Co. ("Media"), to

23  continue publication of <u>Industriales</u>. José J. Balmaceda, the

24  president of Media, encountered significant problems from competition

1    with MarketNext after Plaintiff had retained him in December 2008 to

2    print Industriales. On January 27, 2009, MarketNext threatened Media

3    with legal repercussions from Media's "illegal" use of "Industriales"

4    for its publication authorized by Plaintiff. Docket No. 1-31. In the

5    letter, MarketNext claimed trademark protection under Puerto Rico law

6    and asserted that it had been using the title, "Industriales," since

7    May 2003. Id. Potential interviewees and advertisers expressed

8    reservations about cooperating with Media due to their previous

9    relationship with MarketNext, leading Balmaceda to believe that

10   MarketNext is thwarting his efforts at producing Industriales on

11   behalf of Plaintiff. Two of Plaintiff's members attested to their

12   confusion over continued publication by MarketNext without

13   Plaintiff's authorization. Docket No. 1-29. These affiants asserted

14   that they would not have advertised in MarketNext's publication if

15   they had known that the magazine was unauthorized.  Id.

16       Plaintiff depends on Industriales to effectively communicate

17   with its members and to inform the public at large about its

18   positions on economic policy in Puerto Rico. Since the termination of

19   the Contract, Plaintiff has had no editorial control over Defendants'

20   rival publication. Plaintiff risks loss of goodwill, business

21   opportunities, and a vehicle to expand its membership if it cannot

22   use the mark, "Industriales," without interference.

23       On February 10, 2009, Plaintiff commenced this action in federal

24   district court seeking monetary damages and injunctive relief.

Civil No. 09-1122 (JAF)                                                    -10-

1    <u>Docket No. 1</u>. Plaintiff sought a preliminary injunction against

2    Defendants on February 10, 2009, <u>Docket No. 3</u>; Defendants opposed on

3    March 9, 2009, <u>Docket Nos. 42, 44</u>; we held a hearing on March 10,

4    2009, <u>Docket Nos. 47, 48, 49</u>.

5         On March 11, 2009, we entered an order against Defendants,

6    preliminarily enjoining them from using the mark, "Industriales," in

7    commerce via print or electronic media, causing the public to

8    associate Defendants' services with Plaintiff, and competing unfairly

9    with Plaintiff or its licensees by falsely representing the nature of

10   Defendants' services. <u>Docket No. 46</u>. We allowed Defendants ten days

11   to comply with the order and certify their compliance by sworn

12   affidavit. <u>Id.</u> Furthermore, we granted the preliminary injunction on

13   the condition that Plaintiff post a duly-qualified surety bond in the

14   amount of $20,000 within seventy-two hours to insure Defendants

15   against the effects of an unwarranted injunction. <u>Id.</u> Lastly, we said

16   that a memorandum opinion would follow the order.  <u>Id.</u>

17                                   **II.**

18                                **<u>Analysis</u>**

19        A party may move for a preliminary injunction pursuant to

20   Federal Rule of Civil Procedure 65. In considering the motion, we

21   must ascertain (1) the movant's likelihood of success on the merits;

22   (2) the potential for irreparable harm to the movant absent the

23   injunction; (3) the balance of the equities; and (4) the public

Civil No. 09-1122 (JAF)                                          -11-

1    interest. Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d

2    112, 115 (1st Cir. 2006).

3    **A.    Likelihood of Success on the Merits**

4         To    obtain    a   preliminary   injunction   against   trademark

5    infringement, the likelihood of a plaintiff's success on the merits

6    turns   on   the   plaintiff's   demonstration   "that   its   mark   merits

7    protection and that the allegedly infringing use is likely to result

8    in consumer confusion." Borinquen Biscuit, 443 F.3d at 116.

9         **1.    Entitlement to Trademark Protection**

10        Plaintiff asserts that the mark, "Industriales," is entitled to

11   trademark protection and that Plaintiff has priority in right over

12   the mark. Docket No. 3. We find that Plaintiff has sufficiently shown

13   that "Industriales" is a distinctive mark in the market of trade

14   magazines   printed   in   Puerto   Rico,   and   that   Plaintiff   has   prior

15   ownership of the mark.

16             **a.    Distinctiveness**

17        Federal trademark law only protects marks that distinguish one

18   product from another. Borinquen Biscuit, 443 F.3d at 116 (citing Two

19   Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992)). The mark

20   must "serve[] the purpose of identifying the source of the goods."

21   Colt Def. LLC v. Bushmaster Firearms, Inc., 486 F.3d 701, 705 (1st

22   Cir. 2007). Where a trademark is unregistered, the plaintiff seeking

23   protection   must   satisfy   the   court   of   the   mark's   distinctiveness

24   through   specific   facts.   Borinquen Biscuit,   443 F.3d   at   117.   In

1  rebuttal, the defendant may show the mark's genericness by

2  preponderance of the evidence. See Colt Def., 486 F.3d at 705.

3       Firstly, marks classified as suggestive, arbitrary, or fanciful

4  are inherently distinctive. Borinquen Biscuit, 443 F.3d at 116. A

5  suggestive mark "itself does not convey information about [the]

6  product," but rather "requires the consumer to exercise the

7  imagination in order to draw a conclusion as to the nature of goods

8  and services." Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d

9  542, 545 (1st Cir. 1995). For instance, "COPPERTONE is suggestive of

10 suntan lotion because it hints at the nature of the connected

11 product." Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1,

12 12 n.10 (1st Cir. 2008). An arbitrary mark consists of a word or

13 symbol in common use, but applied to a product in an idiosyncratic

14 way such that it cannot relate to the mark's common definition.

15 Boston Duck Tours, 531 F.3d at 13 n.11 (citing "APPLE" computers as

16 unrelated to fruits). A fanciful mark consists of a word that was

17 specifically invented to identify a certain product. Id. at 13 n.12

18 (citing "EXXON" as "designed solely to designate petroleum and other

19 related goods").

20      Secondly, descriptive marks are those that fall short of

21 inherent distinctiveness. Borinquen Biscuit, 443 F.3d at 116. For

22 example, "Commerce" has been held to be descriptive as applied to an

23 insurance company, rather than inherently distinctive, because it is

24 a word in common use in business. Commerce Nat'l Ins. Servs., Inc. v.

1    Commerce Ins. Agency, Inc., 214 F.3d 432, 440 (3d Cir. 2000).

2    Descriptive marks must acquire secondary meaning before they warrant

3    protection as distinctive marks. Borinquen Biscuit, 443 F.3d at 116.

4    The holder must "establish that, in the minds of the public, the

5    primary significance of the mark is to identify the source of the

6    product rather than the product itself." Id. (internal quotation

7    marks omitted). Secondary meaning could be founded upon the holder's

8    longstanding use of the mark in a particular market. See Commerce

9    Nat'l Ins. Servs., 214 F.3d at 443-44.

10       Lastly, generic marks are never distinctive. Id. Their "primary

11   significance to the relevant public [is] to identify the nature of a

12   good, rather than its source." Colt Def., 486 F.3d at 705 (citing 15

13   U.S.C. § 1064(3)) (internal quotation marks omitted). For instance,

14   "M4" was found to be a generic reference to a class of firearms,

15   rather than a specific designation of a particular manufacturer's

16   products. Id. at 710. To establish genericness as a defense, the

17   defendant may resort to consumer surveys, common use in media, use by

18   competitors, purchaser testimony, and plaintiff's own use. Id. at

19   706.

20              I.   **Suggestive Mark**

21       Plaintiff insists that "Industriales" qualifies as a suggestive

22   and, hence, an inherently distinctive, mark. Docket No. 3. Although

23   Spanish is an official language in Puerto Rico, 1 L.P.R.A. § 59

24   (1999), we translate non-English words into English to assess whether

Civil No. 09-1122 (JAF)                                              -14-

1    putative marks are suggestive or descriptive, see Attrezzi, LLC v.

2    Maytag Corp., 436 F.3d 32, 38 (1st Cir. 2006) (applying the doctrine

3    of foreign equivalents).

4         The Spanish term, "Industriales," simply means "industrialists"

5    in English. Cassell's Spanish-English Dictionary 367 (1978). Even

6    though the readers of Industriales may apprehend that it is a trade

7    magazine targeting manufacturers, "industrialist," by itself, does

8    not require an imaginary leap to identify the nature of the

9    publication. Cf. Equine Techs., 68 F.3d at 545 (finding that

10   imagination is needed to link "Equine Technologies" to plaintiff's

11   hoof care products). Therefore, Plaintiff will not likely establish

12   "Industriales" as an inherently distinctive mark at trial. See id.

13                       **ii.  Secondary Meaning**

14        Although "Industriales" does not meet the standard for

15   suggestive marks, it has nonetheless acquired secondary meaning as a

16   descriptive mark. To become distinctive, "the public [must]

17   associate[] the [descriptive] term . . . not only with a specific

18   feature or quality, but also with a single commercial source."

19   Boston Duck Tours, 531 F.3d at 13.

20        Like "commerce," "industrialist" is a word in common use which

21   describes certain goods or services. See Commerce Nat'l Ins. Servs.,

22   214 F.3d at 440. However, Plaintiff points to news articles referring

23   to it as "los Industriales" as early as 2000. Docket Nos. 1-8, 15-4.

24   The first several issues of Industriales explicitly advertised its

25   affiliation with Plaintiff on the front cover. See Docket No. 1-12.

1    Mastheads  in  later  issues  continued  to  alert  readers  of  the

2    publication's association with Plaintiff until Defendants produced

3    two unauthorized editions in late 2008. Even if the title by itself

4    failed to distinguish the magazine, MarketNext's tireless efforts in

5    promoting the publication served to publicly associate "Industriales"

6    with  Plaintiff's  periodical.  Certainly,  by  the  end  of  2008,  the

7    advertising customer base of <u>Industriales</u>, which included many large

8    entities engaged in commerce in Puerto Rico, had come to identify the

9    mark with the journal itself. Such association explains the confusion

10   of  some  customers  when  Media  approached  them  for  advertising  and

11   interviews for its licensed publication. Thus, Plaintiff has produced

12   sufficient evidence for a preliminary finding that "Industriales" has

13   gained  secondary  meaning  to  become  a  distinctive  mark.  <u>See</u>  <u>Boston</u>

14   <u>Duck Tours</u>, 531 F.3d at 13.

15                  **iii. <u>Genericness Defense</u>**

16        In an effort to defeat trademark protection, Defendants assert

17   that "Industriales" is a generic term.  <u>Docket No. 42</u>.  We direct our

18   inquiry  to  the  meaning  that  the  "relevant  public"  attaches  to  the

19   word. <u>See</u> <u>Colt Def.</u>, 486 F.3d at 706.

20        Based on the evidence in the record, we find that the relevant

21   market  is  that  of  potential  advertisers  and  readers  interested  in

22   doing business in, or engaging in commerce with, Puerto Rico. As

23   noted above, Plaintiff has cited instances of actual confusion among

24   potential  advertisers  who  associated  the  mark  with  a  single

25   publication. <u>Docket No. 1-29</u>. Defendant has presented no evidence of

1    other publications with an identical title, such that "Industriales"

2    has become a commonplace name for publications in Puerto Rico. Cf.

3    Colt Def., 486 F.3d at 710 (finding that "M4" described an entire

4    class of firearms). Although Defendants' own application for

5    trademark protection in Puerto Rico, Docket No. 1-17, does not estop

6    them from raising the genericness defense, see Boston Duck Tours, 531

7    F.3d at 22-23, it is relevant evidence of the mark's primary

8    significance to the relevant public, see id. at 18. As Defendants'

9    evidence is equivocal at best, they cannot rebut Plaintiff's case for

10   trademark protection. See id.

### b.   **Priority in Right**

12   In riposte, Defendants maintain that, even if "Industriales"

13   deserves trademark protection, MarketNext, not Plaintiff, owns the

14   mark. Docket No. 42. On the contrary, we find that Plaintiff owns the

15   mark by virtue of its agency relationship with MarketNext.

### i.   **First Use**

17   At the threshold, "it is well settled that the right to use [a]

18   . . . mark is based on priority of appropriation." See Blanchard

19   Importing & Distrib. Co. v. Charles Gilman & Son, Inc., 353 F.2d 400,

20   401 (1st Cir. 1965). However, for federal trademark protection to

21   attach, a mark must have been used in interstate commerce. See The

22   Trade-Mark Cases, 100 U.S. 82 (1879).

23   Although Plaintiff first printed a newspaper supplement,

24   "Industriales," in El Nuevo Día in 2001, there is no evidence that

25   circulation of this supplement reached beyond Puerto Rico. However,

Civil No. 09-1122 (JAF)                                              -17-

1   there is ample evidence that the magazine, <u>Industriales</u>, has been

2   distributed to Plaintiff's members, which includes public and private

3   entities in the United States proper. <u>See</u> <u>Docket No. 48</u> (item 18).

4   Moreover, Misla has informed his customers that MarketNext intends to

5   expand distribution in the United States. <u>Docket Nos. 1-32, 15-22</u>.

6        Thus, first use of "Industriales" as a mark for a magazine may

7   not have occurred until 2003.[1] Indeed, MarketNext asserted in its

8   application for trademark protection that it had first used the mark

9   in commerce in September 2007. <u>Docket Nos. 1-17, 15-11</u>. In other

10  words, the mark did not become a valuable asset subject to ownership

11  until it was appropriated by first use in a magazine under the

12  Contract between Plaintiff and MarketNext. <u>See</u> <u>Blanchard Importing</u>,

13  353 F.2d at 401. Assuming that first use occurred during the course

14  of performance on the Contract, we address the ownership of fruits of

15  the contractual relationship.

16                        **ii.  <u>Agency Relationship</u>**

17       The civil law of Puerto Rico, 31 L.P.R.A. § 4421-88 (1990),

18  furnishes the substantive law of agency. <u>González-González v. United</u>

19  <u>States</u>, 581 F. Supp. 2d 272, 279 (D.P.R. 2008) (citing <u>Erie R.R. v.</u>

20  <u>Tompkins</u>, 304 U.S. 64, 78 (1938)). In Puerto Rico, an agent binds

21  himself to render a service on behalf of his principal. 31 L.P.R.A.

22  § 4421. The agency relationship ("mandato") may be formed expressly

23  or may be implied from the acts of the putative agent. <u>Id.</u> § 4422.

_____

[1] If Plaintiff had indeed first used "Industriales" as a mark for
publications in 2001, Plaintiff would necessarily be the owner of the mark.
<u>See</u> <u>Blanchard Importing</u>, 353 F.2d at 401.

1    Generally, unless the parties agree to compensation, the agent

2    presumably agrees to perform his services gratuitously. Id. § 4423.

3    Finally, an agent must account for all transactions conducted on

4    behalf of the principal. Id. § 4443. The agent must render to the

5    principal all fruits received in the course of the agency

6    relationship, even if they did not arise from debts owed to the

7    principal. Id.

8        In the case at bar, Plaintiff contracted MarketNext to produce,

9    publish, and promote the publication, Industriales. Docket Nos. 1-10,

10   15-6. MarketNext undertook to make its best efforts to promote

11   Industriales as the exclusive dealer of the trade journal. Id. The

12   Contract required MarketNext to abide by numerous conditions, in

13   terms of production schedules and prohibited content, in rendering

14   performance for Plaintiff. Id. The Contract obliged MarketNext to

15   submit its advertising efforts to regular review by Plaintiff. Id.

16   Although the Contract failed to specify the manner in which

17   MarketNext was to account for profits, it provided that a certain

18   portion of the profits could become payable to Plaintiff. Id. In the

19   course of performance, Riefkohl occasionally exercised final

20   discretion over the content of the publication. Furthermore, Misla

21   testified that he believed that Riefkohl could influence the content

22   of the magazine. Even if the Contract did not expressly define the

23   relationship as one of agency, we may infer it from the terms of the

24   Contract and MarketNext's conduct under the agreement. See 31

25   L.P.R.A. § 4422.

1    Because MarketNext was Plaintiff's agent, all fruits received in

2    the course of MarketNext's performance naturally belong to the

3    principal, Plaintiff. See id. § 4443. The mark, "Industriales,"

4    became a valuable asset after its first use in the magazine in 2003.

5    Although MarketNext was instrumental to the creation of this asset,

6    MarketNext was an agent to Plaintiff and, thus, could not have "used"

7    the mark for its own sake to appropriate it. Furthermore, MarketNext

8    was under obligation to tender the mark to Plaintiff upon the

9    termination of their Contract.[2] See id. Therefore, ownership of the

10   mark properly rests with Plaintiff.

11        **2.  Likelihood of Consumer Confusion**

12        Plaintiff contends that it is likely to prevail on the merits

13   because of actual confusion by Plaintiff's members and customers who

14   advertise in Industriales. Docket No. 3. Eight factors guide the

15   inquiry into consumer confusion:

16                 (1) the similarity of the marks; (2) the
17                 similarity of the goods; (3) the relationship
18                 between the parties' channels of trade; (4) the
19                 relationship between the parties' advertising;
20                 (5) the classes of prospective purchasers;
21                 (6) evidence of actual confusion; (7) the
22                 defendant's intent in adopting its mark; and
23                 (8) the strength of the plaintiff's mark.

---

[2] In addition, Plaintiff did not grant its rights to Defendants as compensation. The Contract is silent on intellectual property rights, Docket Nos. 1-10, 15-6, and the law generally presumes gratuitous assumption of duties by an agent, 31 L.P.R.A. § 4423. Moreover, the Contract expressly provided for profit-sharing with MarketNext, Docket Nos. 1-10, 15-6, and, thus, fulfilled Plaintiff's obligation to pay MarketNext as an agent who specializes in marketing, see 31 L.P.R.A. § 4423.

1    Borinquen Biscuit, 443 F.3d at 120. A court should take all eight

2    factors into account, but none is dispositive by itself. Id.

3         Of the eight factors, evidence of actual confusion is most

4    probative of potential confusion in the market. Id. Plaintiff has

5    presented statements from its members indicating actual confusion

6    over the identity of the competing magazines of Plaintiff and

7    Defendants. Docket No. 1-29.

8         Furthermore, Plaintiff and Defendants' sparring over the use of

9    an identical magazine title easily disposes of the first two factors.

10   See Borinquen Biscuit, 443 F.3d at 120. Plaintiff's evidence of

11   reluctance of prospective interviewees and advertisers on account of

12   their prior engagement with Defendants satisfies the third, fourth,

13   and fifth factors.  See id.

14        Misla's letter informing his customers of the severance of

15   relations with Plaintiff satisfies the seventh factor. Docket Nos. 1-

16   32, 15-22; see Borinquen Biscuit, 443 F.3d at 120. By projecting

17   further expansion of the magazine's circulation, Misla clearly

18   understood that "Industriales" had become a valuable asset for

19   advertising purposes. See Docket Nos. 1-32, 15-22. Furthermore, by

20   insisting that Olivero is the only person authorized to contract

21   advertisements for Industriales, Misla tried to steer clients away

22   from Plaintiff and usurp Plaintiff's trademark ownership to reap

23   anticipated benefits. See id.

24        Lastly, our previous discussion of the mark's entitlement to

25   protection suggests that the mark has some strength. See Boston Duck

1    <u>Tours</u>, 531 F.3d at 23 (discussing strength of mark by reference to

2    prior analysis of secondary meaning). Therefore, Plaintiff has shown

3    that it is likely to prevail on the merits. <u>See</u> <u>Borinquen Biscuit</u>,

4    443 F.3d at 116.

5    **B.   <u>Irreparable Harm</u>**

6         "[T]rademark infringements may be presumed without more to cause

7    irreparable harm." <u>Am. Bd. of Psychiatry & Neurology v. Johnson-</u>

8    <u>Powell</u>, 129 F.3d 1, 4 (1st Cir. 1997). As noted above, Plaintiff has

9    demonstrated its entitlement to trademark protection and actual

10   confusion among consumers. Plaintiff's loss of editorial control over

11   the contents of Defendants' publication also threatens to tarnish

12   Plaintiff's public image, as readers may associate unauthorized

13   statements with Plaintiff itself. Furthermore, Plaintiff has come to

14   rely on the magazine for communicating with its members and the

15   general public, and loss of the publication would erode its influence

16   in print and electronic media associated with industrial interests in

17   Puerto Rico. Lastly, Defendants' promotional efforts target

18   Plaintiff's members and, hence, threaten direct interference with

19   Plaintiff's relationship with its members. Plaintiff has, therefore,

20   established the likelihood of irreparable harm to its business

21   opportunities, goodwill, and capacity for effective communication

22   absent a preliminary injunction.

23   **C.   <u>Balance of Equities</u>**

24        In addition to the probable harm noted above, Defendants'

25   conduct is noteworthy for its flagrantly bad faith. While punitive

1    damages are unavailable for contractual breach at common law, the

2    civil law of Puerto Rico penalizes deceitful performance on a

3    contract. See Prado-Álvarez v. R.J. Reynolds Tobacco Co., 405 F.3d

4    36, 44-45 (1st Cir. 2005) (noting that contractual deceit (*dolus* or

5    *dolo*) is basis for recovery). The doctrine of *dolus* extends to pre-

6    contractual negotiations. Satellite Broad. Cable, Inc. v. Telefónica

7    de España, S.A., 807 F. Supp. 218, 220 (D.P.R. 1992) (interpreting

8    Civil Code art. 1802 to require good faith in negotiations).

9         Defendants' applications for copyright and trademark protection

10   evince steady encroachment on Plaintiff's rights to the fruits of its

11   agency relationship with MarketNext. Docket Nos. 1-17, 15-11, 44-2.

12   MarketNext should have been aware that it served at the pleasure of

13   Plaintiff, and that MarketNext published the magazine expressly for

14   Plaintiff under their Contract. See Docket Nos. 1-10, 15-6. It is

15   manifest absurdity for MarketNext to demand Plaintiff's recognition

16   of MarketNext's claim to intellectual property, *i.e.*, Plaintiff's

17   relinquishment of its own rights, as the basis for renegotiation of

18   the Contract. Docket Nos. 1-15, 15-10.

19        In addition, MarketNext owed a duty of loyalty, first and

20   foremost, to Plaintiff. See 31 L.P.R.A. § 4442 (requiring agent to

21   follow principal's instructions). MarketNext was, thus, under a duty

22   not to compete with Plaintiff, its principal, or to usurp

23   opportunities that arose from its work on behalf of Plaintiff. See

24   id. (requiring agent to act as a good parent would for a family).

1    Misla effectively confessed his disloyalty in open court when he

2    testified that he considered his advertising customers to be the

3    chief clients for MarketNext. Furthermore, MarketNext should have

4    known that any customer relations that it had developed under the

5    Contract were for Plaintiff's benefit and that it ought not wrest

6    members away from Plaintiff. In attempting to cement its usurpation

7    of Plaintiff's proprietary interests by its abuse of legal procedure,

8    and in breaching its duty of loyalty to Plaintiff, MarketNext has

9    proven itself to be a faithless servant indeed.

10   **D.   <u>Public Interest</u>**

11   Lastly, the public interest weighs in favor of preliminary

12   injunction. Defendants have insisted upon continuing their

13   publication without authorization from Plaintiff. <u>Docket Nos. 1-32,</u>

14   <u>15-22</u>. Defendants have represented themselves as publishers of

15   <u>Industriales</u> in such a way as to mislead Plaintiff's members into

16   believing that MarketNext, not Media, is authorized to print the

17   magazine. <u>Docket No. 1-29</u>. Under these circumstances, the public

18   could be easily deceived into believing that Defendants' publication

19   represents Plaintiff's views on behalf of Puerto Rico's industries.

20   Given Plaintiff's advocacy on behalf of two-fifths of Puerto Rico's

21   economy, the potential harm to the public is particularly grave.

Civil No. 09-1122 (JAF)                                                -24-

1                                    **III.**

2                                **Conclusion**

3          Having heard all the witnesses with relevant knowledge, and

4    examined all pertinent documents, we reinstate the preliminary

5    injunction against Defendants, Docket No. 46, and **ORDER** the

6    Defendants to show cause, **on or before April 3, 2009,** as to why the

7    preliminary injunction should not be converted into a permanent

8    injunction.

9          **IT IS SO ORDERED.**

10         San Juan, Puerto Rico, this 23rd day of March, 2009.

11                                        s/José Antonio Fusté
12                                        JOSE ANTONIO FUSTE
13                                        Chief U.S. District Judge